O

# United States District Court
# Central District of California

| | |
|---|---|
| APT ELECTRONICS,<br><br>            Plaintiff,<br><br>     v.<br><br>SMTC CORPORATION et al.,<br><br>            Defendants. | Case № 8:25-cv-00098-ODW (JDEx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [19]** |

## I.     INTRODUCTION

Plaintiff APT Electronics brings this breach of contract action against Defendants SMTC Corporation and MC Test Service, Inc. dba MC Assembly ("Defendants"). (Second Am. Compl. ("SAC"), ECF No. 17.) Defendants move to dismiss APT's claims based on Federal Rules of Civil Procedure ("Rule" or "Rules") 12(b)(2), lack of personal jurisdiction, and 12(b)(6), failure to state a claim. (Mot. Dismiss SAC ("Mot." or "Motion"), ECF No. 19.) For the reasons addressed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[2]

APT is a "fully automated electronic contract manufacturer" specializing in box build assembly. (SAC ¶ 9.) SMTC provides end-to-end electronics manufacturing services. (*Id.* ¶ 10.) SMTC wholly owns MC Assembly, an electronics manufacturer. (*Id.* ¶¶ 6, 11.) In December 2018, APT began discussing with SMTC a project that APT had with Boeing ("Boeing Contract"). (*Id.* ¶ 12.) On December 28, 2018, MC Assembly—not SMTC—sent APT a cost proposal for some of the Boeing Contract assembly work. (*Id.*) After APT obtained approval from Boeing for SMTC and MC Assembly to perform the work, APT, SMTC and MC Assembly agreed orally and in writing to work together on the Boeing Contract. (*Id.* ¶¶ 12–13.) The scheduled deliverables for this work spanned from 2019 to 2023. (*Id.* ¶ 14.)

In March 2021, after SMTC and MC Assembly had missed several deadlines and failed to perform satisfactory work, APT, SMTC, and MC Assembly agreed that APT would pay for the remaining Boeing Contract work with milestone payments. (*Id.* ¶¶ 16–17.) According to the agreement, SMTC and MC Assembly would retain all the milestone payments only if they completed all the remaining work. (*Id.*) In May 2021 and February 2022, APT paid MC Assembly two milestone payments of $226,504.00 each. (*Id.* ¶ 18.) However, in December 2023, APT discovered issues with some of SMTC and MC Assembly's work and determined they were not "performing work in a timely manner or pursuant to Boeing's quality specifications and drawings." (*Id.* ¶ 19.) Thus, in January 2024, APT cancelled the remaining items and demanded return of the portion of the advance payments related to the uncompleted work, $361,655.76. (*Id.* ¶¶ 19, 21.) SMTC and MC Assembly refused to return the advance payments. (*Id.* ¶ 21.) Following APT's cancellation, SMTC and MC Assembly shipped all remaining products and materials to APT. (*Id.* ¶ 22.) APT

---

[2] All factual references derive from APT's Complaint and well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

reviewed the products and found they did not meet standards, requiring APT to correct and complete the work. (*Id.*)

Based on the above allegations, APT initiated this action against Defendants to recover the unreturned advance payments and the cost to itself to correct and complete the work. (*Id.* ¶¶ 23–46.) APT asserts that MC Assembly is SMTC's alter ego, and the two companies operate and should be treated as one. (*Id.* ¶ 6.) It asserts five causes of action against them: (1) breach of contract, (2) conversion, (3) money had and received, (4) open book account, and (5) unfair competition. (*Id.* ¶¶ 23–46.)

Defendants move to dismiss APT's claims based on Rules 12(b)(2) and 12(b)(6), arguing the Court lacks personal jurisdiction over MC Assembly and that APT fails to sufficiently allege an alter ego relationship, conversion, and unfair competition. (Mot. 10.)

### III. LEGAL STANDARD

#### A. Rule 12(b)(2)—Personal Jurisdiction

Federal courts have the power to exercise personal jurisdiction to the extent permitted by the laws of the states in which they sit. Fed. R. Civ. P. 4(k)(1)(A). "California's long-arm jurisdictional statute is coextensive with federal due process requirements . . . ." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *see* Cal. Civ. Proc. Code § 410.10. Therefore, the court inquires whether the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). When a defendant seeks dismissal under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that personal jurisdiction is proper. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).

**B.     Rule 12(b)(6)—Failure to State a Claim**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint "could not be saved by any amendment." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); Fed. R. Civ. P. 15(a).

## IV.     DISCUSSION

Defendants argue the Court should dismiss MC Assembly because the Court lacks personal jurisdiction over it and APT fails to adequately allege an alter ego relationship between SMTC and MC Assembly that could provide it. (Mot. 10.

Defendants further argue the Court should dismiss APT's causes of action for conversion and unfair competition as insufficiently pleaded. (*Id.*)[3]

### A.   Personal Jurisdiction & Alter Ego Doctrine

The only basis that APT asserts for the Court's personal jurisdiction over MC Assembly is that MC Assembly is SMTC's alter ego. (SAC ¶¶ 6, 8; Opp'n 3–8.) Defendants do not challenge the Court's personal jurisdiction as to SMTC. (*See generally* Mot.; Opp'n 3, ECF No. 27.) Instead, Defendants argue that the Court must dismiss MC Assembly because (1) it is not subject to the Court's personal jurisdiction, (Mot. 12–18), and (2) APT fails to adequately allege that MC Assembly is SMTC's alter ego, (*id.* at 18–23).[4]

A party seeking to establish personal jurisdiction over a person or entity can either: (1) show each defendant's sufficient contacts with the forum state, or (2) use the alter ego theory to "extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (emphasis omitted). "Alter ego is an extreme remedy" and is "sparingly used." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 539 (2000). "The purpose of the doctrine is to bypass the corporate entity in order to avoid injustice." *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015). Thus, it is applied only in "narrowly defined circumstances." *Id.* (citing *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 301 (1985)).

---

[3] Defendants briefly suggest the Court should also dismiss SMTC because "the alleged transaction underlying [APT's] claims was between MC Assembly and [APT]," and not SMTC. (Reply 1, , ECF No. 29; Mot. 22.) However, Defendants do not develop this argument. As such, the Court does not consider it. *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived.").

[4] Defendants challenge APT's alter ego allegations only under Rule 12(b)(6). (Mot. 18–23.) As such, the Court evaluates APT's alter ego assertions under the plausibility standard of *Twombly* and *Iqbal*. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

A plaintiff asserting alter ego must allege specific facts supporting: (1) "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities . . . do not in reality exist," and (2) "an inequitable result if the acts in question are treated as those of the corporation alone." *Sonora*, 83 Cal. App. 4th at 538. Both prongs are "necessary for a [c]ourt to impose alter ego liability." *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1176 (C.D. Cal. 2016).

In determining whether to apply the alter ego doctrine, courts may consider factors including: the "commingling of funds and other assets"; one entity holding itself out as liable for the debts of the other; "identical equitable ownership in the two entities"; use of the same offices and employees; "the failure to maintain arm's length relationships"; "the use of the corporate entity to procure labor, services, or merchandise for" the other; and the use of one as a "mere shell, instrumentality or conduit." *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811–12 (2010). This list is not exclusive, and courts must "examine all the circumstances to determine whether to apply the doctrine." *Gerritsen*, 116 F. Supp. 3d at 1137. "[T]he party seeking to have the corporate entity disregarded has the burden of proving that the alter ego theory should be applied." *Matter of Christian & Porter Aluminum Co.*, 584 F.2d 326, 338 (9th Cir. 1978); *see Minifie v. Rowley*, 187 Cal. 481, 487–88 (1921) (requiring that the complaint contain sufficient factual allegations to invoke alter ego doctrine).

Regarding the first prong—unity of interests—APT offers little more than a conclusory recitation of the alter ego factors listed above. (SAC ¶ 6.) APT states that MC Assembly is a "wholly owned subsidiary of SMTC"; MC Assembly and SMTC share the "same equitable ownership," "location for the corporate headquarters," and "officers and directors"; SMTC used MC Assembly "as a mere shell, instrumentality or conduit to conduct a single enterprise"; they "failed to maintain arm's length relationships"; and SMTC used MC Assembly to "procure labor, services and goods for the other in completing the assembly alleged." (*Id.*) These allegations are merely

conclusions, unsupported by any specific facts, and thus insufficient to establish a unity of interests. *Gerritsen*, 116 F. Supp. 3d at 1136 ("[A] plaintiff must allege specific facts supporting" the necessary elements).

The only *factual* allegations APT offers to support unity are that SMTC and MC Assembly "did not distinguish between themselves in their dealings with APT," and that, although APT initially discussed the project with SMTC, it was MC Assembly that submitted a cost proposal. (SAC ¶ 6.) These facts, standing alone, fall far short of establishing that "the separate personalities . . . do not in reality exist." *Sonora*, 83 Cal. App. 4th at 538; *see Gerritsen*, 116 F. Supp. 3d at 1138–43 (finding plaintiff failed to adequately allege unity of interest, despite raising more than ten factors in support). Thus, APT fails to adequately allege a unity of interests.[5] This failure alone warrants refusal to impose the alter ego doctrine. *Tatung*, 217 F. Supp. 3d at 1176 ("Both factors are necessary for a [c]ourt to impose alter ego liability.").

As for the second prong—inequitable result—APT alleges nothing at all in the Second Amended Complaint to support that there will be "an inequitable result if the acts in question are treated as those of the corporation alone." *Sonora*, 83 Cal. App. 4th at 538; (*see generally* SAC). Nor is it an inequitable result, as APT argues in opposition, to require APT to "incur more time and expense refiling this action in Florida." (Opp'n 8.) Declining to impose alter ego here does not deprive APT of its rights as it may still pursue its suit against MC Assembly in Florida. *See Salkin v. United Servs. Auto. Ass'n*, 767 F. Supp. 2d 1062, 1068 (C.D. Cal. 2011) ("[T]here is no evidence that an 'inequitable result' will occur if the two entities are considered to be separate [where] [p]laintiffs will be able to maintain their suit against" defendant in a different court.). Thus, APT fails to adequately allege an inequitable result, which is

---

[5] To support its argument that SMTC and MC Assembly acted as a single entity in their dealings with APT, APT requests judicial notice or incorporation by reference of SMTC's website and press release, and also submits copies of correspondence between the parties. (Req. Judicial Notice, ECF No. 28; Decl. Ty Kim ISO Opp'n ¶¶ 4, 6, Exs. A–C, ECF Nos. 27-1 to 27-4). As these documents exceed the pleading and are subject to reasonable dispute, (*see* Reply 4 n.1), the Court **DENIES** APT's request and does not consider them here.

an additional and independent basis for the Court to decline to impose the alter ego doctrine. *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1070 (C.D. Cal. 2002) (entering judgment for defendant where plaintiff "failed to raise any genuine issue of material fact regarding the second, or 'inequitable results,' prong" of alter ego doctrine).

As the only basis that APT asserts for the Court's personal jurisdiction over MC Assembly is that MC Assembly is SMTC's alter ego, and as APT fails to adequately allege that alter ego relationship, the Court dismisses MC Assembly for lack of personal jurisdiction. APT suggests that it can add facts supporting the alter ego relationship. As such, dismissal is with leave to amend.

**B.   Conversion**

Defendants argue APT's conversion cause of action is not cognizable because it merely restates APT's breach of contract claim. (Mot. 23.) However, "Rule 8(d) of the Federal Rules of Civil Procedure expressly permits a plaintiff to plead claims in the alternative," *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015), even where those claims are "mutually exclusive," *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 (9th Cir. 2007). Here, APT alleges that the terms of the oral and written agreement are in dispute. (*See* SAC ¶ 30.) Thus, it is plausible that Defendants were not contractually obligated to return the advanced funds, making conversion a properly pleaded alternative. *See SDI Labs, Inc. v. Sameday Techs., Inc.*, No. 2:23-cv-05619-MRA (MRWx), 2025 WL 1141165, at *5 (C.D. Cal. Mar. 24, 2025) (finding conversion claim "properly pleaded in the alternative to the breach-of-contract claim" where the terms of the agreement were in dispute and it was possible that the defendant "was not contractually obligated to return the escrow funds").

As APT properly pleads conversion in the alternative, the Court denies Defendants' Motion as to this cause of action.

### C. Unfair Competition

Similarly, Defendants argue APT's cause of action for unfair competition fails because it is also based on the breach of contract allegations and "[a]n alleged breach of contract . . . may not be a predicate for a[n unfair competition] action as a matter of law.'" (Mot. 24 (quoting *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008).) Defendants misstate the case they quote, *Puentes*. The court in *Puentes* actually wrote: "[A] breach of contract may . . . form the predicate for Section 17200 [unfair competition] claims, *provided it also constitutes conduct that is 'unlawful, or unfair, or fraudulent.'*" *Puentes*, 160 Cal. App. 4th at 645 (first two alterations in original) (quoting *Watson Lab'ys, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1117 n.12 (C.D. Cal. 2001)). Here, APT asserts that Defendants' refusal to return the advance payments is *unfair* business conduct. (SAC ¶ 44; Opp'n 10.) Thus, the question is whether APT adequately pleads unfair competition under the "unfair" prong. (*See* Mot. 24 (arguing the unfair competition claim fails as insufficiently alleged).)

With respect to business practices that affect consumers, courts have applied three different tests to determine whether a practice is "unfair." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256–57 (2010). APT relies on the test that defines an "unfair" business practice as one that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." (Opp'n 11 (quoting *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020).) Under this formulation, the court must "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal. App. 4th at 257.

APT contends that Defendants contracted for advanced payments, failed to provide the promised services and products, and then refused to return the advanced funds. (Opp'n 11 (citing SAC ¶¶ 12–13, 17–19, 21, 44).) Accepting APT's well-pleaded allegations as true, Defendants' business practice of accepting and retaining funds for work that Defendants do not complete is plausibly "unethical,"

"unscrupulous," and "substantially injurious to consumers."  *Doe*, 982 F.3d at 1214.  Further, the Court finds no reasonable utility to Defendants' retaining APT's advanced funds, and Defendants offer none.  (*See* Mot. 23–25; Reply 7.)

As APT sufficiently pleads a cause of action for unfair competition under the "unfair" prong, the Court denies Defendants' Motion as to this cause of action.

## V.  CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss APT's Second Amended Complaint.  (ECF No. 19.)  Specifically, the Court grants the Motion to the extent that APT fails to adequately allege that MC Assembly is SMTC's alter ego and **DISMISSES** APT's claims against MC Assembly for lack of personal jurisdiction, with leave to amend.  The Court denies the Motion in all other respects.

If APT wishes to amend, it must do so no later than **twenty-one (21) days** from the date of this Order, in which case **Defendants** shall answer or otherwise respond within **fourteen days** of the filing.  If APT does not timely amend, the dismissal of MC Assembly for lack of personal jurisdiction shall be deemed final as of the lapse of the deadline to amend and **SMTC** shall answer within **fourteen days** of the lapsed deadline.  If APT elects to amend, any amendment must be limited to allegations concerning Defendants' alter ego relationship and the Court's exercise of personal jurisdiction over Defendants.

**IT IS SO ORDERED.**

September 16, 2025

                                                                                           
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**